# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| RUBEN LANDON DANTE<br>2113 SAND RIDGE DR<br>TEXAS CITY, TEXAS 77568<br><br>Plaintiff,<br><br>vs.<br><br>POWER HOME REMODELING GROUP LLC, ASHER RAPHAEL, COREY SCHILLER,DAIVY P DAMBREVILLE, KAITLYN CONRAD, JOSEPH GREEN, JALEN LEWIS,<br><br>*Joint, Individually, several or Similarly Situated under Respondeat Superior Defendant §,*<br><br>POWER HOME REMODELING GROUP LLC.,<br>747 N SHEPHERD DR #800, HOUSTON, TX 77007<br><br>POWER HOME REMODELING INC., DBA PHRG, POWER HRG, POWER HOME REMODELING GROUP LLC.<br>2501 SEAPORT DRIVE FOURTH FLOOR<br>CHESTER, PA 19013<br><br>Defendant, | Case No.: Number<br><br>**JURY DEMANDED** |

## PLAINTIFFS' COMPLAINT AND JURY DEMAND

TO THE HONORABLE COURT:

**NATURE OF THIS ACTION**

1. Plaintiff, Ruben Landon Dante ("Plaintiff") who worked for Defendant Respondeat Superior POWER HOME REMODELING GROUP LLC, POWER HOME REMODELING GROUP INC., AKA POWER HRG, or PHRG (jointly "Defendants") bring this action to redress fraudulent inducement, wage theft, whistleblower retaliation, Promissory estoppel damages, personal sex and

gender discrimination, workplace wide race discrimination and retaliation for reporting and opposing race discrimination in the workplace and separate wage retaliation for the reporting of sex and gender discrimination.

2. Plaintiff also incurred great damages derived from Fraudulent Inducement, "Common Law Fraud" in the context of a contract "Anderson V. Durant 5505. S.W.3d 605, 614 (Tex. 2018)", promissory estoppel "Cohen v. Cowles Media Co. 501 US 663 (1991)", wage theft Tex. Section 61.019 and Minimum Wage violations 29 U.S. Code § 206 and under The Fair Labor Standards Act (FLSA). Plaintiff was ultimately terminated upon requesting recordkeeping of hours due to wage theft and disclosing such to the U.S Department of Labor. This making termination in Dept. of Labor's whistleblower retaliation under Section 15(a) (3) of the FLSA and defamatory comments of the same.

2. Plaintiff was further made to endure personal and employee class Hostile Work environment, Sexual Harassment as defined Under EEFA, 'Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 6 2021" after March 3rd. 2022 as prescribed in Title VII of the Civil Rights Act of 1964 ("Title VII"). The unlawful discrimination happened at Defendant's workplace in violation of 42 U.S.C. § 1981 ("Section 1981") during the time of training and ongoing.

3. Plaintiff was subjected to one or more aspects of the systemic race discrimination described in this Complaint, including, but not limited to:

discriminatory policies, practices and procedures in selection, promotion, and advancement; disparate pay; differential treatment; and hostility in the workplace. The systemic racial discrimination described in this Complaint has been, and is, continuing in nature and whether defendants committed coordinated perjury in the attempted coverup thereof (18 U.S.C. § 1621.), 18 U.S.C. § 1001, (Section 1001 of title 18).

**JURISDICTION AND VENUE**

4. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(a)(4) and 28 U.S.C. § 1331. This is a discrimination suit authorized and instituted pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981").

5. Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(c) because Defendants are subject to personal jurisdiction and reside in Texas. 7. The Southern District of Texas is the most logical forum in which to litigate the claims of the Representatives and the proposed plaintiffs in this case. Plaintiffs worked at Defendants' facility in Harris County. Furthermore, many of the potential employee class members reside in all areas of the Southern District of Texas.

**PARTIES**

**Plaintiffs,**

8. RUBEN LANDON DANTE individual plaintiff or Representative Class as the court may direct is a citizen of the United States and a resident of Texas

**Defendants,**

9. Respondeat Superior, POWER HOME REMODELING GROUP does business in the state of Texas and is resisted with the Texas Secretary of State. POWER HOME REMODELING GROUP may be served with process by serving the Secretary of State of Texas who may then serve POWER HOME REMODELING GROUP at its' Texas Registered Agent, "Corporation Service Company dba CSC - Lawyers Incorporating Service Company" Addressed at: 211 E. 7th Street, Suite 620. Austin Texas 78701-3218

10. POWER HOME REMODELING GROUP LLC. is Delaware corporation with its principal place of business in Chester Pennsylvania. It may be served by serving its registered agent "CORPORATION SERVICE COMPANY" registered address, 251 LITTLE FALLS DRIVE, New Castle County WILMINGTON., Delaware 19808.

11. **<u>COMMON QUESTIONS OF LAW AND FACT</u>**

12. Plaintiff will require the adjudication of numerous questions of law and fact common to both their individual claims and those of the putative they seek to represent. The common questions of law include:

13. **TORT JOINT AND SEVERAL LIABILITY**

14. Whether Defendants are join and severally liable federally or by the state per The Texas Commission on Human Rights Act ("TCHRA") provisions Effective September 1, 2021 and individual liability against one who "acts directly in an interests of the employer in relation to an employee may be liable for failing to adequately address sexual harassment that "reasonably interferes with an employee's work performance." Asher Raphael, Corey Schiller, Daivy P Dambreville, Joe Green Jaylen Lewis, Kaitlyn Conrad, knew of the rampant sexual harassment taking place and failed to take immediate corrective action and instead enabled and promoted those engaged in it, themselves included.

15. **Class Action**

16. Whether the court may direct to treat this case as a standalone plaintiff case or a class action in the interest of law as the court may direct (Per Tex. R. Civ. P. 42) as all the following elements are true and correct: (a) Class Action PREREQUISITES. One or more members of a class may sue or be sued as

representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. the class plaintiff seeks to represent pray for, declaratory and injunctive relief; back pay; front pay; compensatory, nominal and punitive damages, expenses to redress Defendants' pervasive and discriminatory employment policies, fraudulent inducement, promissory estoppel, hostile work environment, sexual harassment, sex and gender discrimination practices and procedures.

17. One class consists of employee members who are, or have been, employed by Defendants and have experienced race discrimination at any time during the applicable liability period or have experienced retaliation for reporting or opposing race discrimination in the employee class role at large.

18. The other class has opposed and reported racial discrimination with a separate account of sex, and gender discrimination in the within the scope of the Houston office and faced retaliation for it.

19. Plaintiff has been personally subject to endure all the above and files this suit on those same personal first account grounds as standalone plaintiff while disclosing there is a certification of a class of employees similarly situated and the most efficient and economical means of resolving the questions of law and fact which are common to the claims of the proposed class. The individual claims of the plaintiff requires resolution of the common question of whether Defendants have engaged in a systemic pattern of practice.

20. These employment policies, practices and procedures are not unique or limited to any one department; rather, they apply to all departments, and, thus, affect the employee members in the same ways no matter the district, division, or position in which they work. Throughout the liability period, a disproportionately large percentage of the managers and supervisors at Defendants have not been racial minorities or those who oppose or report race discrimination.

21. The common questions of law further include:

22. **Fraudulent inducement**. The extent to which defendant engages in systemic fraudulent inducement, the opportunity cost damages and long-term consequential impacts in changing market conditions, wages owed, and other damages derived from the same. Fraudulent Inducement is A "species of

common-law fraud" that "arises only in the context of a contract." Anderson v. Durant, 550 S.W.3d 605, 614 (Tex. 2018). Like a broader common- law fraud claim, a fraudulent-inducement claim requires proof that: (1) the defendant made a material misrepresentation; (2) the defendant knew at the time that the representation was false or lacked knowledge of its truth; (3) the defendant intended that the plaintiff should rely or act on the misrepresentation: (4) the plaintiff relied on the misrepresentation; and (5) the plaintiff's reliance on the misrepresentation caused injury. Id. In a fraudulent-inducement claim, the "misrepresentation" occurs when the defendant falsely promises to perform a future act while 6 having no present intent to perform it. Id. The plaintiff's "reliance" on the false promise "induces" the plaintiff to agree to a contract the plaintiff would not have agreed to if the defendant had not made the false promise.

23. This kind of fraudulent inducement is consequential beyond anything one can put to words from the opportunity cost of talent falling amiss innovations of this nation captured by such inducement to national loss of economic revenue captured by the same, and systemic disillusionment of the American Dream procured by bad actors with fraudulent pay to play reach.

24. <u>**Sexual Harassment**</u> Whether Defendants have engaged in unlawful Sexual Harassment in the general terms and conditions of work and employment, whether Defendants are joint and severally liable for a continuing systemic

violation of protections against sexual harassment; and a determination of the proper standards for proving a pattern or practice of the same or retaliation by Defendants against its employees or those who oppose or report sexual harassment. The inception point of the action derives from "sexual harassment", reporting, and retaliation thereof as defined by "EEFA, 'Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 6 2021" and to which complaints happened after March 3rd 2022. Therefore, forced arbitration clauses do not apply to any of the claims, (22 CIV. 6669 (PAE), 2023 WL 2216173 (S.D.N.Y. Feb. 24, 2023, 9 U.S.C. § 402(a)).

25. **42 U.S.C. § 1981 ("Section 1981") Systemic Racial Discrimination in the territorial delegation to employees.** Overt Unlawful systemic racial discrimination in violation of 42 U.S.C within the scope and delegation of task, preferred territory, early workplace departure, promotions, commissions, systemic suppression of advancement, metrics, promotions or otherwise implied against racial minority structured into the preferred adjudication of territory systemically delegated to straight white males and discrimination at large otherwise.

26. **Personal Discrimination on Sex and Gender**

27. Whether Defendants have engaged in unlawful retaliation upon the report of Sexual harassment, pay drop, gender, and sex discrimination. Whether Defendants have engaged in unlawful sex and gender Discrimination in the general terms and conditions of work and employment, whether Defendants are liable for a continuing systemic violation of protections against sexual harassment; and a determination of the proper standards for proving a pattern or practice of the same or retaliation by Defendants against its employees or those who oppose or report sex and gender discrimination.

28. **Deletion of documents prohibited by Federal Government Agency**

Whether Defendants have engaged in unlawful deletion of documents and consequential outcomes to the plaintiff's detriment thereof, whether Defendants are liable for a continuing systemic violation of federal regulators request for non-deletion; and a determination of the proper standards for proving a pattern or practice of the same. Whether defendant presumes guilt upon investigations of Items set for deletion.

29. **Lying under penalty of perjury to The Department of Labor**

30. Whether Defendants have engaged in unlawful perjury under (18 U.S.C. § 1621.), 18 U.S.C. § 1001, (Section 1001 of title 18), beyond oath and extent of

manipulation of documents given to the same and consequential outcomes to the plaintiff's detriment thereof. whether Defendants are liable for a continuing systemic violation of federal regulators request for non-deletion; and a determination of the proper standards for proving a pattern or practice of the same.

31. **Lying under penalty of perjury to The EEOC**

32. Whether Defendants have engaged in unlawful perjury under (18 U.S.C. § 1621.), 18 U.S.C. § 1001, (Section 1001 of title 18), beyond oath and extent of manipulation of documents given to the same and consequential outcomes to the plaintiff's detriment thereof. whether Defendants are liable for a continuing systemic violation of federal regulators request for non-deletion; and a determination of the proper standards for proving a pattern or practice of the same.

33. **Collective Or Individual Retaliation Count**

34. Whether Defendants have engaged in unlawful Whistleblower retaliation and whether such retaliation is to be an individual or collective charge.

35. **Department of Labor Whistleblower Retaliation**

36. Whether Defendants have engaged in unlawful Whistleblower retaliation under **Section 15(a)(3) of the FLSA states that it is a violation for any person to** "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." **Employees are protected regardless of whether the complaint is made orally or in writing. Complaints made to the Wage and Hour Division are protected, and** most courts have ruled that internal complaints to an employer are also protected. **"**Because section 15(a)(3) prohibits "any person" from retaliating against "any employee", the protection applies to all employees of an employer even in those instances in which the employee's work and the employer are not covered by the FLSA"

37. **Wage Theft**

38. Whether Defendants have engaged in unlawful wage theft under The Fair Labor Standards Act (FLSA) establishes minimum wage, overtime pay, recordkeeping, and youth employment standards affecting employees in the private sector and in Federal, State, and local governments. Covered nonexempt workers are entitled to a minimum wage of not less than $7.25 per hour effective July 24, 2009. Overtime pay at a rate not less than one and

one-half times the regular rate of pay is required after 40 hours of work in a workweek.

39. **Recordkeeping violations**

40. Whether Defendants have engaged in unlawful record keeping violations and unlawful minimum wage exemptions under The Fair Labor Standards Act (FLSA) establishes minimum wage, overtime pay, recordkeeping, and youth employment standards affecting employees in the private sector and in Federal, State, and local governments as it is not purely a sales, outdoor sales or commission job, nor are employees procuring purely commissioned work.

41. **Minimum wage Violations** Whether Defendants have engaged in minimum wage exemptions under The Fair Labor Standards Act, Executive Order 11246 and have knowing, able and willingly engaged in fraudulent designations of wage exemptions and The Constitutionality and applications of the same.

42. **Inter Alia** Whether Defendants have engaged in unlawful hostile work environment, Promissory estoppel, sexual harassment, general discrimination, systemic race discrimination in territorial deployment, lead quality inter alia and retaliation in its selection, promotion, advancement, transfer, training, and discipline policies, practices or procedures, and in the

general terms and conditions of work and employment, whether Defendants are liable for a continuing systemic violation of Section 1981; and a determination of the proper standards for proving a pattern or practice of discrimination or retaliation by Defendants against its employees or those who oppose or report racial discrimination.

43. **<u>42 U.S.C. § 1981 ("Section 1981") common questions of fact in the systemic practice of territorial delegation to employees</u>**

44. Include, inter alia: whether Defendants have, through its policies, practices or procedures, denied or delayed the promotion of minority employees or those who opposed or reported racial discrimination. (b) precluded minorities from eligibility for promotions by denying them training which employees who are not of minority group or those who did not oppose or report racial discrimination are granted. (c) paid those who opposed or reported racial discrimination at a disparate level; (d) subjected those who opposed or reported racial discrimination to differential treatment, including, but not limited to, less preferable work assignments, inequitable evaluations and stricter disciplinary policies, practices or procedures; and those who opposed or reported racial discrimination to hostility, or a hostile work environment. The employment policies, practices, and procedures to which the Plaintiffs

and the class members are subject are set at Defendants' corporate level and apply universally to all class members throughout the world. These employment policies, practices and procedures are not unique or limited to any one department; rather, they apply to all departments, and, thus, affect the employee members in the same ways no matter the district, division, or position in which they work. Throughout the liability period, a disproportionately large percentage of the managers and supervisors at Defendants have not been racial minorities or those who oppose or report race discrimination.

45. Discrimination in selection, promotion and advancement occurs as a pattern and practice throughout all levels and all divisions of Defendants. Selection, promotion, and advancement opportunities are driven by personal familiarity, subjective decision-making, preselection and interaction between non affected managers, supervisors, and subordinates and those who have not opposed or reported retaliation rather than by merit or equality of opportunity. As a result, employees who are not in any protected class or who have not opposed or reported race discrimination have advanced and continue to advance more rapidly to better and higher paying jobs than those who opposed or reported racial discrimination.

46. Defendants' policies, practices and procedures have had an adverse impact on African Americans or those who opposed or reported racial discrimination seeking selection for, or advancement to, better and higher paying positions.

In general, a higher level of job classification correlates with a lower percentage of those who opposed or reported racial discrimination employees holding those positions.

47. **CLAIMS AS IT PERTAINS TO THE DELEGATION OF TERRITORY IN THE SALES JOB**

48. The plaintiff and potential class seek to represent have been subjected to a systemic pattern and practice of race discrimination or retaliation involving a battery of practices which have also had an unlawful, disparate impact on them and their employment opportunities. The discrimination includes adhering to a policy and practice of restricting the promotion and advancement opportunities of employees so that they remain in the lower classification and compensation levels, as well as terminating complainants accordingly.

49. Defendants in effect bar any who oppose unlawful practices from better and higher, paying positions which have traditionally been held by other employees and selectively terminate their employment. The systemic means of accomplishing such discriminatory stratification include, but are not limited to, Defendants' promotion, training and performance evaluation policies, practices and procedures. Defendants' promotion, advancement, training, and performance evaluation policies, practices and procedures incorporate the following discriminatory practices: (a) relying upon subjective

judgments, procedures, and criteria which permit and encourage the incorporation of racial stereotypes and bias by Defendants' predominately non-minority managerial and supervisory staff in making promotion, training, performance evaluation, compensation, and termination decisions; (b) refusing or failing to provide equal training opportunities to those whom have expressed such concern or of member class; (c) refusing or failing to provide the same with opportunities to demonstrate their qualifications for advancement; (d) refusing or failing to establish and follow policies, practices, procedures, or criteria that reduce or eliminate disparate impact or intentional bias; (e) using informal, subjective selection methods which allow for rampant racial discrimination; (f) disqualifying employees for vacancies by unfairly disciplining them; (g) penalizing employees for exercising the rights afforded to them by Section 1981; (h) subjecting employees to racial hostility in the work environment; and (i) selectively terminating the employment of the same.

50. Defendants' promotion policies, practices and procedures have had a disparate impact on plaintiff and the class members. The policies, practices, and procedures are not valid, job-related, or justified by business necessity. There are alternative objective and more valid. selection procedures available to the Defendants that are more closely related to the actual responsibilities of the positions, and which would have less of a disparate impact on such.

However, the Defendants have failed to use or have refused to use such alternative procedures.

51. Defendants' promotion, training, performance evaluation, compensation, and transfer policies, practices and procedures are intended to have a disparate impact on Plaintiff and associated demographic.

52. The practices form a part of the Defendants' overall pattern and practice of keeping such in the lower classifications which have fewer desirable terms and conditions of employment and causing termination of their employment.

53. Because of Defendants' systemic pattern and practice of discrimination, plaintiff has been adversely affected and have experienced harm, including the loss of compensation, wages, back pay, and employment benefits. This pattern and practice of gender discrimination includes: being denied promotions in favor of equally or less qualified non-protected employees; being denied training opportunities provided to other employees; receiving lower performance appraisals for performing the same work at the same level as other employees; being disciplined more frequently and more severely other employees, including being disciplined for engaging in behaviors for which minority employees are not disciplined; being subjected to a hostile work environment; and being terminated.

54. The Class Representatives and the class they seek to represent have been subjected to racial hostility or retaliation at work, both severe and pervasive,

which affects the terms and conditions of their employment. The Defendants' actions and inactions encourage this behavior by its employees.

55. The individual Plaintiffs have no plain, adequate, or complete remedy at law to redress the rampant and pervasive wrongs alleged herein, and this suit is their only means of securing adequate relief. The Plaintiffs are now suffering irreparable injury from Defendants' unlawful policies, practices and procedures as set forth herein, and will continue to suffer unless those policies, practices and procedures are enjoined by this Court.

56. **PLAINTIFF STATEMENT OF FACTS**

57. The plaintiff seeks to maintain claims on their own and first account witness of a class of current and former employees of Defendants.

58. Plaintiff Endured Damages derived by fraudulent inducement and promissory estoppel of the same.

59. One class consists of non-cis white males who are, or have been, employed by Defendants and have experienced race discrimination at any time during the applicable liability period or have experienced retaliation for reporting or opposing race discrimination personally endured and witnessed by plaintiff. Plaintiff is representative of the class upon information and belief, there are several hundred members of the proposed class.

60. Plaintiff has opposed or reported racial discrimination by Defendants and has experienced retaliation.

61. Plaintiff expressed Department of Labor minimum wage concerns and experienced retaliation and Prompt termination upon so.

62. On or around April 3rd 2022 Ruben Landon Dante was called to interview with Power Home Remodeling Group for the position of "Remodeling Consultant" Listed as salary position starting at 130,000 Dollars up to 180,000 Dollars.

63. Joe Green, who is titled Vice President for Defendant assured that based on plaintiff resume and background 180,000 was no issue to be met.

64. Plaintiff began working for Respondent on April 18, 2022, as a Remodeling Consultant. Throughout CP's employment, CP experienced discrimination from Respondent and was treated poorly due to the fact that they identify as a non-binary individual and reports of personal and class sexual harassment of the same.

65. On June 23,2022, during a training Jaylen Lewis made very crude and sexist comments. He said things like "hold on to their pussy's and do them good to make the sale." Mr. Lewis made other comments like "work up the pussy like at the club" in reference to sales. Charging Party took offense to these comments along with other females in the group. That same day, Charging Party sent a text to Joe Green, Houston VP, to complain about the things

that were being said. That same day, Charging Party made a verbal complaint to HR about the sexist comments that were being made.

66. On June 25, 2022, Charging Party sent an email to HR to complain about the way women were being treated, the way managers were instructing employees to treat women clients and how Charging Party was being treated poorly as a fluid man by his straight male supervisor. Charging Party had a meeting with the Houston VP, Joe Green, to discuss the complaint that was made. Charging Party was told during the meeting "you are not a girl so this shouldn't bother you."

67. On July 1, 2022, Charging Party noticed that their paycheck reflected a dramatic decrease totaling to less than minimum wage, a cut in his pay being a form of retaliation for the complaint made to HR. Shortly thereafter, Charging Party's territory was reduced, another form of retaliation that impacted their ability to earn commissions and meet performance goals.

68. On July 19, 2022, Charging Party brought their concerns about the retaliatory pay cut to HR in hopes that the error would be corrected. That same day, Charging Party contacted the Department of Labor and Wage Hour Division to discuss the pay dispute since they were being paid less than minimum wage.

69. On July 20, 2022, Plaintiff informed defendant that they had reached out to the Department of Labor and Wage Hour Division, Charging Party was told

by HR that they were exempt from minimum wage because commissions exempt sales employees.

70. On or about July 21, 2022, Joe Green called Charging Party suggesting plaintiff may reasonably have desires to quit the position. That same day Charging Party emailed HR to complain about the phone call because of the threat to Charging Party's job and the ongoing retaliation. Later that day Charging Party found out that their employment had been terminated due to performance.

71. On June 14, 2022. Defendant submits manufactured letter under penalty of perjury "Performance Review" which was fabricated by Respondent, to cover up the fact that Charging Party was actually never given and performance review or even a real chance to perform. It appears that the signature on said "Performance Review" is a digital signature and not the Charging Party's true signature. Lastly it still does not make sense as to why the "Review Date" is stated to be 7/13/22 at the top of the document and dated 6/14/2022 at the bottom. when a performance review is conducted an employee is made to sign that same the review was conducted. Since Respondent has produced fraudulent documents and lies in its Position Statement, Charging Party ask the EEOC to establish the misrepresentations by Respondent as further evidence of pretext.

72. Plaintiff was never really given a chance to fully perform. Charging Party's offer letter states that "your training will begin with a 60- day introduction

into the company, concentrating on the Marketing Department specifically." Charging Party was not provided any Marketing Department training. After day 60, Charging Party was to begin his "Sales Training Program" that would continue for 5 weeks. Charging Party worked at Respondent for only 91 days and was not allowed to complete their training period before being terminated. Respondent claims that Charging Party did not meet the "standard" but Respondent failed to allow Charging Party a chance to fully complete the training period.

73. Plaintiff was terminated before completing the training period and a clear form of discrimination and retaliation for making complaints about Mr. Green and for contacting the Department of Labor Hour and Wage Division. Charging Party only ever received praise, accolades, and positive feedback on his performance.

74. Defendant Joe Green state he had no knowledge of Charging Party's complaints to HR, but Mr. Green most definitely knew that Charging Party had complaints about a toxic work environment based on discrimination and questions about their pay.

75. Kaitlin Conrad states on her declaration to the EEOC under penalty of perjury in clear coordination with the individual defendants that she knows her initial contact and all communication with Charging Party was conducted via email. This statement is also false.

76. On June 27, 2022 Plaintiff received text messages from Kaitlin Conrad and a voicemail that was left by Ms. Conrad.

77. On June 28, 2022. Once again Respondent has produced inaccurate statements in its Position Statement, Charging Party requests that the EEOC establish additional pretext for CP's adverse employment action.

78. Defendant claimed to have no knowledge of Charging Party's self-identification, this statement is untrue. Several coworkers knew how Charging Party self-identified. In fact, Mr. Green had mentioned to Charging Party that the pride event was something Charging Party could work. Charging Party was left out of this LGBTQ event even though others knew Charging Party identified as being a part of the LGBTQ community. Defendant made claims to the EEOC not to have discriminated or retaliated against Charging Party based on their sex because they did not know. This is simply not true. As mentioned in the position statement Charging Party entered his status as "Genderqueer, Non-Binary" on their on-line employee profile.

79. **<u>CAUSE OF ACTION</u>**

80. Count 1: Fraudulent Inducement

81. Plaintiff re-alleges all previous allegations that appear above. The defendant made a material misrepresentation; The misrepresentation was made with

knowledge of its falsity or asserted without knowledge of its truth; The defendant made the misrepresentation with the intention that the plaintiff should rely on or act upon the misrepresentation; The plaintiff relied on the misrepresentation; and the plaintiff's reliance on the misrepresentation caused injury. Plaintiffs prays for individual and / or class non-economic damages, economic damages, and punitive damages, compensatory damages for all types of losses, including direct costs, lost wages, indirect costs, pain and suffering, inconvenience, willfully reckless harm, punitive damages, compensatory damages or otherwise.

82. Count 2: Promissory Estoppel: Plaintiff relied on named defendants Promise, and injustice can only be avoided if the promise is enforced. Plaintiff re-alleges all previous allegations that appear above. Plaintiffs prays for individual and / or class non-economic damages, economic damages, and punitive damages, compensatory damages for all types of losses, including direct costs, lost wages, indirect costs, pain and suffering, inconvenience, willfully reckless harm, punitive damages, compensatory damages or otherwise.

83. Count 3: Sexual Harassment: Title VII of the Civil Rights Act of 1964 ("Title VII") makes it illegal for employers to allow anyone to be sexually harassed at work by anyone else, regardless of sex, gender, or sexual orientation. Plaintiff

re-alleges all previous allegations that appear above. Plaintiffs prays for individual and / or class non-economic damages, economic damages, and punitive damages, compensatory damages for all types of losses, including direct costs, lost wages, indirect costs, pain and suffering, inconvenience, willfully reckless harm, punitive damages, compensatory damages or otherwise.

84. Count 4: Hostile Work Environment Under Title VII, a hostile work environment exists when the workplace is "permeated with discriminatory, intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. Plaintiff re-alleges all previous allegations that appear above. Plaintiffs prays for individual and / or class non-economic damages, economic damages, and punitive damages, compensatory damages for all types of losses, including direct costs, lost wages, indirect costs, pain and suffering, inconvenience, willfully reckless harm, punitive damages, compensatory damages or otherwise.

85. Count 5: Tort jointly and severally liability. Plaintiff re-alleges all previous allegations that appear above. Jointly and / or severally liability As lawfully applicable per The Texas Commission on Human Rights Act ("TCHRA") provisions Effective September 1, 2021 and potential <u>individual liability</u> against one who "acts directly in an interests of the employer in

relation to an employee may be liable for failing to adequately address sexual harassment that "reasonably interferes with an employee's work performance." Asher Raphael, Corey Schiller, DAIVY P DAMBREVILLE, Joe Green Jaylen Lewis, Kaitlyn Conrad, knew of the rampant sexual harassment taking place and failed to take immediate corrective action and instead enabled and promoted those engaged in it, themselves included. Plaintiffs prays for individual and / or class non-economic damages, economic damages, and punitive damages, compensatory damages for all types of losses, including direct costs, lost wages, indirect costs, pain and suffering, inconvenience, willfully reckless harm, punitive damages, compensatory damages or otherwise.

86. Count 6: Retaliation, Discrimination, Harassment and Negligence Respondeat Superior Jointly and severally liability per Respondeat Superior holding an employer or principal legally responsible for the wrongful acts of an employee. An employer now "commits an unlawful employment practice if sexual harassment of an employee occurs and the employer or the employer's agents or supervisors: (1) know or should have known that the conduct constituting sexual harassment was occurring; and (2) fail to take **immediate and appropriate corrective action**."

87. Count 7: Department of Labor Minimum Wage Whistleblower Retaliation: Fair Labor Standards Act - The Fair Labor Standards Act (FLSA) establishes minimum wage, overtime pay, recordkeeping, and youth employment standards affecting employees in the private sector and in Federal, State, and local governments.

88. Count 8: Department of Labor Recordkeeping Whistleblower Retaliation: **Section 15(a)(3) of the FLSA states that it is a violation for any person to** "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." **Employees are protected regardless of whether the complaint is made orally or in writing. Complaints made to the Wage and Hour Division are protected, and** most courts have ruled that internal complaints to an employer are also protected. **"**Because section 15(a)(3) prohibits "any person" from retaliating against "any employee", the protection applies to all employees of an employer even in those instances in which the employee's work and the employer are not covered by the FLSA". Plaintiff re-alleges all previous allegations that appear above. Plaintiffs prays for individual and / or class

non-economic damages, economic damages, and punitive damages, compensatory damages for all types of losses, including direct costs, lost wages, indirect costs, pain and suffering, inconvenience, willfully reckless harm, punitive damages, compensatory damages or otherwise.

89. Count 9: EEOC Whistleblower Retaliation: The EEO laws prohibit punishing job applicants or employees for asserting their rights to be free from employment discrimination including harassment. Asserting these EEO rights is called "protected activity," and it can take many forms. For example, it is unlawful to retaliate against applicants or employees for: Communicating with a supervisor or manager about employment discrimination, including harassment. Plaintiff re-alleges all previous allegations that appear above. Plaintiffs prays for individual and / or class non-economic damages, economic damages, and punitive damages, compensatory damages for all types of losses, including direct costs, lost wages, indirect costs, pain and suffering, inconvenience, willfully reckless harm, punitive damages, compensatory damages or otherwise.

90. Count 10: Sex Discrimination Plaintiff re-alleges all previous allegations that appear above. Plaintiffs prays for individual and / or class non-economic damages, economic damages, and punitive damages, compensatory damages for all types of losses, including direct costs, lost wages, indirect costs, pain

and suffering, inconvenience, willfully reckless harm, punitive damages, compensatory damages or otherwise jointly and / or severally liability As lawfully applicable.

91. Count 11: Gender Discrimination Plaintiff re-alleges all previous allegations that appear above. Plaintiffs prays for individual and / or class non-economic damages, economic damages, and punitive damages, compensatory damages for all types of losses, including direct costs, lost wages, indirect costs, pain and suffering, inconvenience, willfully reckless harm, punitive damages, compensatory damages or otherwise jointly and / or severally liability As lawfully applicable.

92. Count 12: Racial Discrimination Plaintiff re-alleges all previous allegations that appear above. Plaintiffs prays for individual and / or class non-economic damages, economic damages, and punitive damages, compensatory damages for all types of losses, including direct costs, lost wages, indirect costs, pain and suffering, inconvenience, willfully reckless harm, punitive damages, compensatory damages or otherwise jointly and / or severally liability As lawfully applicable.

93. Count 13: False income claims. Defendants consistently misrepresented income projections, salaries and wages top down. Plaintiff re-alleges all previous allegations that appear above. Plaintiffs prays for individual and / or class non-economic damages, economic damages, and punitive damages, compensatory damages for all types of losses, including direct costs, lost wages, indirect costs, pain and suffering, inconvenience, willfully reckless harm, punitive damages, compensatory damages or otherwise jointly and / or severally liability As lawfully applicable.

94. **Public interest:**

95. This kind of unlawful action feeds into the worst antagonism of the workplace to the detriment to the same privileged class in hostile work environments to begin with perpetuating national hostility built upon fraudulent grounds and willful bad actors. In other words, its companies like Power Home Remodeling Group that engage in pay to play positive press on false grounds whom by the same false grounds performative impulse which drove them engage in this vile behavior to the detriment of the American Workplace. It becomes a widescale representation of workplace discrimination at large whose same widescale was precured by the malice of its own fraud to begin with casting a widescale shadow of its own fraudulent inducement. It also addresses questions of joint and serval liability as it pertains to tort,

negligence, discrimination as it pertains to management and / or Respondeat superior and the merits of minimum wage violations, exemptions and carve outs.

96. **RELIEF SOUGHT**

97. Jury Demand

98. Plaintiff requests a trial by jury to as lawfully applicable.

99. **WHEREFORE, plaintiff on behalf of themselves and / or as a class as the court may direct, request the following relief:**

100. A. Personal Damages derived by fraudulent inducement and promissory estoppel of 180,000 plus Plaintiffs prays for individual and / or class non-economic damages, economic damages, and punitive damages, compensatory damages for all types of losses, including direct costs, lost wages, indirect costs, pain and suffering, inconvenience, willfully reckless harm, punitive damages, compensatory damages or otherwise. PLAINTIFF prays for 40,000 in rental and housing due to the same and 45,000 in owed by promissory estoppel having had dual location. Plaintiff prays for no less 50,000 for sexual harassment in accordance to the average of the same. Plaintiff prays for the

maximum whistleblower retaliation for the Department of Labor Whistleblower of 250,000 Plaintiffs prays for the maximum whistleblower retaliation of 250,000 for the EEOC Whistleblower Retaliation as this court will find both accounts to be unbelievably egregious, brazen, malicious, systemic and retaliatory to the extent of openly, demonstrably and unapologetically lying to federal regulators which this case will demonstrate in a clear and convincing evidentiary manner.

101. **This totals a relief of 815,000 Dollars or as lawfully permitted,**

102. This not including past and ongoing pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, punitive and treble damages.

103. B. Declaratory judgment that Defendants' employment policies, practices and/or procedures challenged herein are illegal and in violation of Section 1981.

104. C. A permanent injunction against Defendants and their partners, officers, owners, agents, successors, employees and representatives and any and all persons acting in concert with them, from engaging in any further unlawful practices, policies, customs, usages, gender discrimination by the Defendants as set forth herein;

105. D. An Order requiring Defendants to initiate and implement programs that (i) will provide equal employment opportunities employees; (ii) will remedy the effects of the Defendants' past and present unlawful employment policies, fraudulent inducement, promissory estoppel, false income claims,

practices or procedures; and (iii) will eliminate the continuing effects of the discriminatory and retaliatory practices described.

106. E. An Order requiring the Defendants to initiate and implement systems of assigning, training, transferring, compensating, and promoting employees in a non-discriminatory manner;

107. F. An Order establishing a task force on equality and fairness to determine the effectiveness of the programs described in (B) through (E) above, which would provide for (i) monitoring, reporting, and retaining of jurisdiction to ensure equal employment opportunity, (ii) the assurance that injunctive relief is properly implemented, and (iii) a quarterly report setting forth information relevant to the determination of the effectiveness of the programs described in above;

108. An Order placing or restoring the Class Representatives and the class members into those jobs they would now be occupying, but for Defendants' discriminatory policies, practices or procedures;

109. H. An Order directing Defendants to adjust the wage rates and benefits for the Class Representatives and the class members to the level that they would be enjoying but for the Defendants' discriminatory policies, practices and/or procedures.

110. I. An award of back pay, front pay, lost benefits, preferential rights to jobs and other damages for lost compensation and job benefits suffered by Representatives and the class members to be determined at trial;

111. J. Any other appropriate equitable relief to plaintiff and / or proposed class members as the court may direct;

112. K. An award of compensatory, nominal, and punitive damages to Plaintiffs.

113. L. An award of litigation costs and expenses, including reasonable attorneys' fees, to the Plaintiffs and class members;

114. M. Pre-judgment interest;

115. N. Such other and further relief as the Court may deem just and proper; And

116. O. Retention of jurisdiction by the Court until such time as the Court is satisfied that the Defendants have remedied the practices complained of herein and are determined to be in full compliance with the law.

Respectfully submitted, I, RUBEN LANDON DANTE, declare as follows:

1. I am a Plaintiff in the present case.
2. I have personal knowledge of the events in the foregoing complaint.
3. I verify under penalty of perjury that the factual statements in this complaint are true.

Dated this 22 of November 2023.

RUBEN LANDON DANTE
2113 SAND RIDGE DR.
TEXAS CITY, TEXAS 77568
PHONE (409) 500-2117 FAX: (713) 405-2229
R.L.DANTE@OUTLOOK.COM